No. 31,372

THE KAW VALLEY STATE BANK, *Appellee*, v. C. G. CHUMOS, *Appellant*.

(27 P. 2d 244.)

Opinion filed December 9, 1933.

*Leonard S. Ferry,* of Topeka, for the appellant.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Margaret McGurnaghan* and *Ralph M. Hope,* all of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal is from an order denying a motion to set aside a sale of attached real estate and sustaining a motion to confirm the sale.

In October, 1928, defendant borrowed $6,000 of the bank, for which he gave his note payable in installments. He paid $600 in 1929, and $600 in 1930. Action to recover on the note was commenced on September 16, 1931, and the petition prayed judgment for $4,800, with interest at the rate of ten per cent per annum from June 1, 1931. While the action was pending defendant paid a further sum of $1,200, and on April 8, 1932, judgment was rendered for $3,973.33.

When the note was given defendant secured payment of it by a mortgage on twenty-five acres of land in Shawnee county. The relief prayed for in the action did not include foreclosure of the mortgage. The mortgage was referred to in the petition, but only in connection with acceleration of maturity of the last installment of the note in the sum of $2,400, not due until June 1, 1933, and in con-

nection with increase of rate of interest, because of default, from seven per cent to ten per cent per annum.

Defendant resided in Seattle, Wash., and was not served personally in this state, but a personal summons was served on him by the sheriff of the county in the state of Washington in which he resided. Service was also made on defendant by publication.

At the commencement of the action lot 74 on North Kansas avenue, in North Topeka, Shawnee county, was attached. Plaintiff notified defendant by letter of what had been done. The letter stated the banking department had ordered the note to be liquidated immediately. The letter further stated that, because defendant was a nonresident, it was necessary, in order to sue him in Shawnee county, to attach the lot.

Defendant did not appear, and when judgment was rendered a personal judgment was taken against him for $3,973.33, and the attached lot was ordered sold to pay the judgment. Afterwards defendant appeared specially, and moved to set the personal judgment aside. Plaintiff said the unauthorized personal judgment was taken "inadvertently," and a *nunc pro tunc* order was entered correcting the original judgment to give plaintiff a lien only.

On May 31, 1932, the attached lot was sold to plaintiff, who was the only bidder, for $2,000. Motion to set aside the sale was denied, and motion to confirm was allowed on October 29, 1932. The motion to set aside was based on the ground the sale was for an inadequate price and was not in accordance with equity. The motion to set aside was supported by affidavit that, by plaintiff's conduct in tying up all defendant's real estate, defendant's credit had been so impaired he could not secure money to pay the judgment or to bid at the sheriff's sale.

Recapitulating dates and events, the loan for $6,000 was made October 9, 1928. The action was commenced on September 16, 1931, and before judgment was taken the sum due had been reduced by payment of $2,400. The judgment for substantially $4,000 was rendered April 8, 1932. The sale for $2,000 was made May 31, 1932. The sale was confirmed October 29, 1932.

The affidavit in support of the motion to set aside the sale disclosed the following facts: The real estate mortgaged to secure the note was assessed for taxation for the year 1930 at $5,000, and for the year 1932 for $4,440, effective November 1, 1932. The attached

lot was assessed for the year 1930 for $13,650, and for the year 1932 for $12,690, effective November 1. When the lot was attached at the commencement of the action in September, 1931, the lot was appraised at $12,000.

The court found the sale was made in conformity to law, and should be confirmed. The court also made the following findings:

"The court further finds that the property sold at said sheriff's sale was an old building, and that although said building was assessed in 1930 at the sum of $12,690, said property has now decreased in value to a great extent, and that due to the current depression and conditions said property does not now have a value exceeding one-third of that amount, and that the amount for which said property was sold, namely, $2,000, was not inadequate and insufficient under the circumstances, and said sale should not be set aside for that reason.

"The court further finds that the plaintiff was the only bidder at such sale, and said plaintiff was guilty of no acts or conduct which were fraudulent, dishonest, or carried out in bad faith; and it is further found that, although the defendant has had from the date of said sale to this date within which to find a purchaser for said property, other than this plaintiff, he has been wholly unsuccessful in such an attempt, and has failed to find such purchaser."

The finding relating to decrease in the value of the lot appears to have been made on judicial knowledge. The finding is to the mathematical effect that the lot did not have a value exceeding $4,230. This sum was in excess of the amount of the judgment and interest at the time of confirmation.

There was testimony for plaintiff that it agreed to dismiss its action and release the attachment proceedings if defendant could procure a loan on the lot, but the source of the court's information that defendant had been unsuccessful in attempt to find a purchaser within the five months elapsing between sale and confirmation is not disclosed, and the price at which defendant failed to sell the lot, if he did, is not disclosed.

While the finding acquits plaintiff of fraud, dishonesty and bad faith, there was no finding stating the sale was made in conformity with equity.

Years ago the statute was that if the court, after careful examination of the proceedings, should be satisfied a sheriff's sale had been made in conformity with the provisions of the article of the code governing the subject, the court should direct the clerk to make an entry on the journal that the court was satisfied with the legality of the sale. Just as in the law of contracts, amount of consideration

is not material, if there is consideration, very small price was not an illegality, and sales could not be set aside for inadequacy of price. The result was, a judgment-creditor might purchase all the debtor's real estate for a small sum and still hold almost the entire judgment unsatisfied over his head. In part to mitigate this harshness the statute was amended, and confirmation was not authorized unless the court should find the sale proceedings were regular and in conformity with law and equity. (R. S. 60-3463.) The effect of the statute was to take price from the field of legality in confirming sales, and place it in the field of equitable consideration.

The tradition of inadequacy of price as a matter of legality only has colored the language of some of the opinions of this court in decisions under the amended statute, but when the decisions themselves are carefully scrutinized it will be found that inadequacy of price alone without addition of extraneous factors of equitable cognizance may make a sale inequitable.

In considering the function of the court under the amended statute, the subject of discretion of the court to confirm or not to confirm came into the opinions of the court. Strictly speaking, this involves an inaccurate use of the word "discretion," which would permit the court to confirm or not to confirm on an established state of facts.

As applied to sale price, the word "adequate" refers to some requirement to be met, or to commensurateness with some standard. The statute fixes the standard to be applied when considering whether a sale shall be confirmed or set aside. The sale must conform with law, a matter of legality, and it must conform with equity, a matter of fairness and justice. While standards of this kind do not have mathematical certainty, and opinions may differ with respect to conformity, the court should apply the standard to the facts and, if in its judgment there is or is not substantial conformity, the court is not at liberty to refuse to act accordingly. The court ought not to say, this sale was not in conformity with equity, but it will be confirmed; or say, this sale was in conformity with equity, but it will be set aside.

To prevent oppression of the debtor by the creditor the legislature brought equity into a late stage of their relations, and, as a background against which the propriety of this sale may be viewed, the situation and conduct of the parties may be sketched.

When the note sued on was given, it was contemplated by both parties that payment in money would be made according to tenor of the paper. The bank was overtaken by adverse economic conditions. When it brought suit the bank acted under compulsion of the banking department, which required defaulted paper to be liquidated, in the ultimate interest of depositors and creditors. There is testimony the case was continued from time to time out of leniency to defendant, but judgment became inevitable, and was taken. When the sale was made the bank was forbidden to purchase and hold real estate except for limited purposes. It was prohibited from bidding more than the amount of debt, interest and costs, and if the lot were not disposed of within five years, it had to be charged off out of earnings or surplus. In view of the uncertainties of the financial situation, the bank used its judgment with respect to what was safe to do and bid $2,000.

When the note was executed, defendant gave security for payment, which the bank accepted, and there is no suggestion in the record that defendant has had any disposition to evade his obligation. He, too, was overtaken by adverse economic conditions and could not meet installments as they fell due. He paid what he could as he could, and after he was sued he continued to pay. The circumstance that defendant was a nonresident gave the bank opportunity to proceed as if he were endeavoring to defraud. It attached the remainder of defendant's real estate in Shawnee county and gave defendant a false reason for doing so. It kept in reserve its mortgage lien. It took advantage of its contract, sanctioned by law, whereby the larger portion of the unpaid debt, not maturing by its terms until June 1, 1933, became due and payable at once. It also took advantage of the contract, sanctioned by law, whereby the interest rate to an already embarrassed debtor went up from seven per cent to ten per cent. With interest accumulating at this rate, and with property mortgaged and attached valued at more than four and a half times any amount the judgment might be, the bank was willing to give defendant some time. The time was given to a nonresident debtor who had defaulted in payment of a note to a bank, who had been sued, and whose property had been attached. The time was within a period when it was difficult for any one to borrow money, and when valuable unencumbered real estate was practically unsalable, even at great sacrifice. Bound hand and foot, defendant

could not move, judgment was taken, and in due time the attached real estate was sold.

Up to the time of sale the bank was privileged to act within the law, without regard to consequences to the hapless debtor, and it did so. At the sale it was required to change its attitude. At the sale the bank acquired real estate which, at its depreciated value, was worth a sum equal to the amount of judgment and interest and probably costs, at the time of confirmation. There was no showing that taxes on the land were or were not delinquent. The bank bid only half the amount of the judgment, and it held in reserve a mortgage on land valued for that year at more than enough to pay the judgment. Without debating the subject, the court holds the sale was not made in conformity with equity. In reaching this conclusion the court has not taken into account the statute enacted since the case was disposed of in the district court, and which reads as follows:

"An Act relating to judicial sales and the confirmation thereof, and defining the equity powers of the courts under section 60-3463 of the Revised Statutes of Kansas of 1923.

"Be it enacted by the Legislature of the State of Kansas:

"Section 1. The court in determining whether or not the proceedings in judicial sales are regular and in conformity with law and equity as expressed in section 60-3463 of the Revised Statutes of Kansas of 1923, may decline to confirm the sale where the bid is substantially inadequate, or in ordering a sale or resale, may, in its discretion, if conditions or circumstances warrant and after a proper hearing, fix a minimum or upset price at which the premises must be bid in if the sale is to be confirmed, or the court may, upon application for the confirmation of the sale, if it has not theretofore fixed an upset price, conduct a hearing to establish the value of the property, and as a condition to confirmation require that the fair value of the property be credited upon the judgment, interest, taxes and costs. A sale for the full amount of the judgment, taxes, interest and costs shall be deemed adequate. This act is intended as declaratory of the equity powers now existent in the courts under section 60-3463 of the Revised Statutes of Kansas of 1923." (Laws 1933, ch. 218, § 1.)

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the motion to set aside the sale.

Hutchison, J., not sitting.